UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **MEDICAL MUTUAL INSURANCE COMPANY OF MAINE,** )<br>)<br>) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | **CIVIL NO. 08-48-P-H** |
| ) | |
| **INDIAN HARBOR INSURANCE COMPANY,** )<br>)<br>) | |
| **DEFENDANT** ) | |

## DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case requires interpretation of an insurance policy. The question is whether the language of a particular Officers and Directors liability insurance policy requires the insurer to pay for the settlement of an employee's disability discrimination claim against the insured company, when the employee enumerated various alleged wrongful acts by certain officers and directors in his administrative claims and lawsuit, but sought relief (administrative and judicial) against only the company itself. I conclude that there is no coverage.

### UNDISPUTED FACTS AND PROCEDURAL HISTORY

Medical Mutual Insurance Company of Maine ("MMIC")'s former chief executive officer filed an administrative complaint with the Maine Human Rights Commission ("MHRC") charging disability discrimination. Pl./Countercl. Def.'s Statement of Material Facts ¶ 6 ("Pl.'s SMF") (Docket Item 26); Def./Countercl.

Pl.'s Opposing Statement of Material Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 6 ("Def.'s Opposing SMF") (Docket Item 35). One section of the "Charge of Discrimination" form instructs:

> NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

Charge of Discrimination (Oct. 26, 2005) (Ex. 7 to Def.'s Mot. for Summ. J.) (Docket Item 27-10) (emphasis in original). In response, the CEO listed "Medical Mutual Insurance Co. of Maine" and no other. Id. His detailed "Statement of Charge," which accompanies the form, lists the offending conduct. Id. In doing so, it refers to actions by MMIC management, board members, and board committees. It concludes:

> 22. In summary, MMIC discriminated against me on the basis of my disability by terminating my employment and insisting that I re-negotiate my employment agreement and accept a new position with substantially diminished responsibilities at a substantially diminished salary. In addition, MMIC retaliated against me because I insisted on my rights under the ADA and the MHRA. Further MMIC failed and refused to provide me with any reasonable accommodation to perform my job as CEO and President, including the reasonable accommodations outlined by Dr. Attfield and Dr. Grube in their reports.

Id. The charge was also sent to the Equal Employment Opportunity Commission ("EEOC") for dual filing purposes. Def./Countercl. Pl.'s Statement of Material Facts ¶ 10 ("Def.'s SMF") (Docket Item 29); Pl./Countercl. Def.'s Opposing Statement of Material Facts ¶ 10 ("Pl.'s Opposing SMF") (Docket Item 33).

Both agencies issued right to sue letters, and the CEO then sued MMIC in this federal court. Def.'s SMF ¶¶ 12-14; Pl.'s Opposing SMF ¶¶ 12-14. He did not

sue any MMIC officers or directors.  Compl., Dowling v. Med. Mut. Ins. Co. of Me., Inc., No. 06-CV-126 (D. Me. July 25, 2006) (Ex. 13 to Def.'s Mot. for Summ. J.) (Docket Item 27-16).  In the factual portion of his complaint in the federal lawsuit, the CEO referred repeatedly to "MMIC acting through members of its Board of Directors and its agents," or used comparable terminology.  Id.  Occasionally he referred to action by a board committee or to the MMIC board of directors.  Id.  In each of his seven counts, however, he referred to only the conduct of "MMIC" itself, or, in one instance, "MMIC, acting through its agents, representatives, and members of its Board of Directors."  He directed his prayer for relief against MMIC; in addition to damages and other relief, he requested the court to "[e]njoin MMIC, its agents, employees, and successors, from continuing to violate Plaintiff's rights." Id. at 16.

Ultimately MMIC settled the case and contributed $325,000 of its own money (in addition to contribution by another insurer).  Def.'s SMF ¶¶ 17, 63-64; Pl.'s Opposing SMF ¶¶ 17, 63-64.  According to the settlement language, the CEO

> hereby releases and agrees to waive any claims he may have against MMIC, and its officers, agents, employees, attorneys, and members of the Board of Directors, successors, affiliates, subsidiaries and insurers, and any and all other persons, firms and corporations employed by or acting as agents of MMIC . . . .

Pl.'s SMF ¶ 50; Def.'s Opposing SMF ¶ 50.

MMIC then brought this lawsuit against Indian Harbor Insurance Company ("Indian Harbor") seeking reimbursement under its Directors and Officers insurance policy.  Indian Harbor has counterclaimed for declaratory relief that it has no obligation to pay.  Both parties have moved for summary judgment.  The

3

relevant facts are undisputed.  I **GRANT** summary judgment to Indian Harbor and **DENY** it to MMIC.

## ANALYSIS

MMIC seeks coverage under the following provision of the Indian Harbor policy, Insuring Agreement I(B).[1]  It provides:

> The Insurer [Indian Harbor] shall pay on behalf of the Company [MMIC] Loss which the Company is required or permitted to pay as indemnification to any of the Insured Persons *resulting from a Claim . . . made against the Insured Persons* . . . for a Wrongful Act or Employment Practices Wrongful Act.[2]

Management Liability & Company Reimbursement Insurance Coverage Form at 1 ("Indian Harbor Policy") (Ex. 1 to Def.'s Mot. for Summ. J.) (Docket Item 27-4) (emphasis added).  The parties agree that their dispute involves Employment Practices Wrongful Acts as defined in the policy.  Pl./Countercl. Def.'s Mot. for Summ. J. at 12 & n.5 (Docket Item 25); Pl.'s SMF ¶ 55; Def.'s Opposing SMF ¶ 55.

"Insured Person" is a term defined as:

> [A]ny past, present or future director or officer, or member of the Board of Managers, of the Company [MMIC] . . . .

Indian Harbor Policy at 2.  "Claim" is a term defined as:

> (1)   a written demand for monetary or non-monetary relief;

---

[1] MMIC agrees that the other two operative provisions, (A) and (C), are not applicable. Pl./Countercl. Def.'s Mot. for Summ. J. at 12 n.4 (Docket Item 25).

[2] Because the parties both treat this as the applicable insuring provision, I do the same.  There is some difficulty in fit, however, because there is no suggestion that MMIC paid any indemnification to any officer or director.  The language of (A) initially appears more pertinent ("The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim . . . made against the Insured Persons") until one reaches the exception clause ("except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as Indemnification").  See Pl.'s SMF ¶ 19; Def.'s Opposing SMF ¶ 19.  In any event, the result is the same under either clause.

>   (2)   any civil proceeding in a court of law or equity, or arbitration;
>   (3)   any criminal proceeding which is commenced by the return of an indictment; and
>   (4)   a formal civil, criminal, administrative regulatory proceeding or formal investigation of an Insured Person . . . including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governing body . . . .

Id. at 1-2. The only question, then, is whether MMIC paid funds as a result of a "Claim . . . made against [an] Insured Person[ ]."

I conclude that no extended discussion is necessary. The CEO may have accused individual MMIC officers and directors of wrongful conduct, but never did he make a claim against any officer or director for relief. His administrative claims with the MHRC and EEOC listed only MMIC; his detailed statement of charge was focused on MMIC; his federal lawsuit sued only MMIC. The fact that his prayer for relief sought injunctive relief against "MMIC, its agents, employees, and successors" does not alter that conclusion. That is boilerplate language always used in an injunction against a corporation. Likewise, the fact that the settlement included not only MMIC, but also "its officers, agents, employees, attorneys, and members of the Board of Directors, successors, affiliates, subsidiaries and insurers, and any and all other persons, firms and corporations employed by or acting as agents of MMIC" is no more than boilerplate settlement language. It is customary to try to extend the reach of a settlement as far as possible. The effort, when successful as here, does not alter the fact that the CEO never made a claim against any officers and directors.

5

This outcome is consistent with the purpose of a Directors and Officers policy, to give those persons insurance coverage to protect them from *personal* liability. 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 131:30 (3d ed. 1995) ("[A]n explosion in litigation against corporate officers and directors made liability coverage a necessity, and corporations wanted to be able to provide such coverage for their officials so that the top candidates for office would not be discouraged by the threat of litigation."). It is also consistent with the general caselaw from other jurisdictions, although I recognize that actual policy language may not always be identical. Caterpillar, Inc. v. Great Am. Ins. Co., 62 F.3d 955, 957 n.1 (7th Cir. 1995) ("D & O policies, which first became popular in the 1960s, protect directors and officers from the potential liability they might incur in performing their duties, thereby encouraging better directors and officers to accept responsibilities and allowing them to take management risks they might not otherwise take."); Bodewes v. Ulico Cas. Co., 336 F. Supp. 2d 263, 270 (W.D.N.Y. 2004) ("[A] 'Directors and Officers' ('D & O') policy[ ] typically provides indemnification coverage to protect directors and officers from personal liability resulting from business decisions.").

## CONCLUSION

On the cross-motions for summary judgment, I conclude that there is no coverage. Therefore, I **GRANT** the defendant insurer's motion and **DENY** the plaintiff insured's motion.

**SO ORDERED.**

**DATED THIS 19TH DAY OF NOVEMBER, 2008**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**